## In re SEARS RETIREE GROUP LIFE INSURANCE LITIGATION.

### No. 97 C 7453.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 26, 2000.

---

Thomas R. Meites, Michael M. Mulder, Paul William Mollica, Shona B. Glink, Meites, Mulder, Burger & Mollica, Roberta A. Levinson, Abrahamson Vorachek & Mikva, Chicago, IL, for plaintiffs.

William A. Gordon, Charles Francis Regan, Jr., James D. Holzhauer, Christine Anne Kexel, Mayer, Brown & Platt, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

MORAN, Senior District Judge.

Plaintiffs are retired former employees of Sears Roebuck & Co. (Sears) who allege that their retirement benefits were reduced under the Sears Group Life Insurance Plan in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiffs now seek class certification of two counts of their complaint. For the reasons set forth below, the motion is denied.

### BACKGROUND

The underlying facts are detailed in our order entered earlier this year, *In re Sears Retiree Group Life Ins. Litig.,* 90 F.Supp.2d 940 (N.D.Ill.2000), and therefore we will not elaborate on them here. Suffice it to say, Sears reduced life insurance benefits for certain retirees in 1997, triggering a number of ERISA lawsuits which are now consolidated in this action. The Second Consolidated Complaint (the complaint) alleges six causes of action: plan enforcement (count I), breach of contract (count II), breach of contract on behalf of early retiree subclasses (count III), estoppel (count IV), breach of fiduciary duty (count V), and alternative equitable relief (count VI). In 1998, plaintiffs filed a motion seeking class certification of counts I–III and V. We held that class treatment was appropriate for counts I and II, but not for counts III and V. *In re Sears Retiree Group Life Litig.,* 1999 WL 35312 (N.D.Ill. Jan. 11, 1999).

Accordingly, the plan enforcement and breach of contract counts proceeded as class claims over the ensuing year. On March 15, 2000, we granted Sears' motion for partial summary judgment with respect to those two counts and denied plaintiffs' similar cross-motion. Despite this adverse ruling, plaintiffs have not given up the fight. Instead, they press on and have now filed a motion asking us to certify their estoppel and breach of fiduciary duty claims for class adjudication. Plaintiffs acknowledge that this is their second pass at seeking class certification of the breach of fiduciary duty count. We rejected their first attempt because, under the theory advanced by plaintiffs at that time, the breach of fiduciary duty claim depended on a variety of oral and written representations that differed across the putative class. Absent a body of evidence indicating that

Sears misled retirees in a more uniform manner, we held that class certification of the breach of fiduciary duty count affronted Seventh Circuit precedent. *In re Sears,* 1999 WL 35312, at *1–2. Plaintiffs explain that their current class theory is based on two documents which they claim were distributed to the entire putative class. Therefore, they assert that their present motion seeks a more limited ruling than before in that it requests class certification only with respect to certain discrete issues.[1] Plaintiffs argue that this approach is appropriate under Rule 23(c)(4)(A), which provides that a class action may be certified with respect to particular issues only. *See* Fed.R.Civ.P. 23(c)(4)(A). Of course, Sears contests plaintiffs' motion with a number of counter-arguments.

## DISCUSSION

### I. *Timeliness of the Motion*

Sears first attempts to parry plaintiffs' motion by arguing that it is too late to seek partial class certification of the estoppel and breach of fiduciary duty claims. Sears gives three reasons. First, it asserts that the arguments raised in the present motion could have and therefore should have been raised in plaintiffs' previous motion for class certification. Second, Sears argues that plaintiffs' motion is tardy because it post-dates our order granting partial summary judgment in Sears' favor, a decision on the merits. Finally, Sears argues that plaintiffs have misconstrued our prior class certification order as an invitation to proceed as they have.

While we are somewhat troubled by the sequence of events here, we will not discard the motion on timeliness grounds. Plaintiffs correctly point out that our ruling on partial summary judgment was a decision on the merits, but only to the extent that it resolved the plan enforcement and breach of contract claims and not with regard to the two counts plaintiffs now seek to certify for class treatment (breach of fiduciary duty and estoppel). *Cf. Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir.1988) (decision whether to certify claims for class adjudication generally should precede resolution of those claims on the merits); *Peritz v. Liberty Loan Corp.,* 523 F.2d 349, 354 (7th Cir.1975) (same). As for our prior order on class certification, while we refused to certify a class on the breach of fiduciary duty claim at that time, we did express a willingness to reassess the situation at some point in the future, stating: "Perhaps if we are restricted solely to the consideration of writings ... some identifiable groups will emerge—persons who were furnished a finite package of materials to encourage their early retirement. But we are not there yet." *In re Sears,* 1999 WL 35312, at *2. Plaintiffs may well have misread our order (*see infra* notes 2 and 8), but they have now attempted to submit a more limited class certification theory than before, and we will afford their motion a substantive review.

### II. *Merits of the Motion*

Plaintiffs' estoppel and breach of fiduciary duty claims are both based on allegedly misleading communications issued by Sears to its employees regarding the permanent nature of retirement life insurance benefits. We denied plaintiffs' first motion for class certification because Sears' statements varied across the class; that is, different employees received a different set of communications. Citing *Frahm v. Equitable Life Assurance Society,* 137 F.3d 955 (7th Cir.1998), *cert. denied,* 525 U.S. 817, 119 S.Ct. 55, 142

---

1. Plaintiffs claim that the common issues as to the breach of fiduciary duty claim are as follows:

   a. Was Sears acting in a fiduciary capacity when it prepared and disseminated informative documents regarding retiree life insurance to its employees?
   b. Were those informative documents materially misleading?
   c. Was Sears aware of the misinformed state of its employees caused by its conduct and did it fail to take proper corrective action?
   d. Did Sears, as the Plan Administrator, fail to properly train its agents to provide accurate information regarding the scope and nature of the retiree life insurance to Plan participants? (Plf. Mot. at 1–2). With respect to the estoppel claim, plaintiffs present the following common issue:
   a. Did Sears make materially false statements of fact regarding the scope and nature of the retiree life insurance benefit under the Group Life Insurance Plan to Plan participants? (Plf. Mot. at 2).

L.Ed.2d 43 (1998), *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir.) (*en banc*), *cert. denied*, 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998), and *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir.1993) (*RCPA*), we held that plaintiffs' motion failed to meet the tests of commonality and typicality. *See* Fed.R.Civ.P. 23(a)(2) and (a)(3). In an attempt to cure this defect plaintiffs now assert that they are relying on only two misleading documents which they claim were distributed to all putative class members. According to plaintiffs, every class member received a booklet entitled "Getting Acquainted With Sears" and a guide called "Sears Benefit Program." Both of these documents referred to the retirement life insurance benefit as "paid-up" and described the benefit as "free life insurance, at age 60, for the rest of your life...." (Plf. Exhs. 3–15). Plaintiffs argue that by focusing on these two common writings we can certify a class action as to the estoppel and breach of fiduciary duty counts without running into the commonality and typicality problems which were fatal to their prior motion.[2]

■ Unfortunately for plaintiffs, we cannot proceed in this manner. Plaintiffs ask us to look at two documents distributed to all class members, putting blinders on, albeit only for the time being, with regard to other communications they may have received. In order to determine liability, however, we cannot view one or two communications in isolation. Rather, we must look at the entire set of communications received by a retiree or class of retirees. The Second Circuit articulated this principle aptly in *Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir. 1997). There, plaintiffs sued Kodak for breach of fiduciary duty, alleging that the company had made materially misleading statements regarding the future availability of a retirement program. The Second Circuit observed that Kodak's liability for breach of fiduciary duty required the court to look at the whole picture: "Determining whether any single statement allegedly made by Kodak is an actionable misrepresentation requires considering the statement's meaning in context. The district court should examine all alleged statements within the total mix of information available" to plaintiffs. *Id.* at 126. The Seventh Circuit is in accord with this "total mix" concept. *See Frahm*, 137 F.3d at 960 (*quoting Sprague*, 133 F.3d at 405); *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 586 (7th Cir.1999) (discussing estoppel claim); *see also Varity Corp. v. Howe*, 516 U.S. 489, 504–05, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that in order to determine whether a defendant acted as an ERISA fiduciary, the court must assess all statements and not "parse[ ] ... communications too finely."). The two documents plaintiffs rely on may well, when viewed in a vacuum, appear misleading. But unless a group of putative class members received *only* those two documents, a contention plaintiffs do not make, the misleading nature of those communications does not prove plaintiffs' point.

Looking at the total mix of statements received by each retiree, as ERISA case law dictates, we find that there is too much variation to permit class adjudication of the estoppel and breach of fiduciary duty claims. In addition to the Getting Acquainted booklet and the Sears Benefit Program guide, which we assume for now were received by all retirees,[3] putative class members received one or more of a number of other communications regarding retirement life insurance benefits. Relevant communications include the following: the summary plan descriptions, which played the lead role in our partial summary judgment order (*see In re Sears*, 90 F.Supp.2d at 943–44); a 1994 document called "Retiree Life Insurance Questions and Answers;" form letters regarding retirement benefits that varied by state;

---

2. In making this argument, plaintiffs claim to be taking a route we directed them toward in our prior order when we said that class certification may be appropriate "if we are restricted solely to the consideration of writings...." *In re Sears*, 1999 WL 35312, at *2. Plaintiffs apparently have mistaken our meaning. *See infra* note 8.

3. There is some indication in the record that over 20,000 retirees (a quarter of the putative class) did not receive the Getting Acquainted booklet relied upon by plaintiffs (Sears Resp. Br. at 18–19).

booklets distributed at various retirement seminars held across the country; company personnel manuals from the 1980s and early 1990s; a 1992 newsletter regarding retirement benefits; materials distributed only to individuals who elected early retirement under a plan offered in 1993; and, finally, statements (oral and/or written) from company officials responding to specific inquiries by individual retirees (Sears Exhs. 5–8, 10–13, 16–18, 20–21). Some of these communications indicated that retirement life insurance benefits were permanent, while others stated that the benefits could be reduced. More importantly, different retirees received a different combination of these communications and therefore the ·total mix of communications varied by retiree.

As in *Frahm, Sprague* and *RCPA,* the putative class members in this case did not receive a uniform set of communications— Sears said different things to different people. *Sprague* involved a nearly identical situation and is particularly instructive. Like Sears' retirees, early retirees of GM learned of their retirement benefits through a variety of different channels. Most retirees received information through exit interviews, many others did so by way of summary documents, some received individual letters, and a few had personal exchanges with company officials. Just as here, some of these communications informed retirees that their benefits would be paid by GM for life, but others notified retirees that GM reserved the right to change or terminate benefits at any time. *Sprague,* 133 F.3d at 395. "Given these myriad variations," the Sixth Circuit held "that

the plaintiffs' claims clearly lacked commonality." *Id.* at 397–98. We find that commonality is lacking in this case for the same reasons. *See Frahm,* 137 F.3d at 957.[4] Furthermore, the varying nature of communications received by retirees offends the typicality test as well. *See Sprague,* 133 F.3d at 399 (holding that there was no typicality since "[e]ach claim … depended on each individual's particular interactions with GM—and these, as we have said, varied from person to person. A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim."); *RCPA,* 7 F.3d at 597 ("Because … there is no indication that [a class of retirees] was treated identically by the City or by its respective fund, [plaintiffs'] claims cannot be deemed typical of the entire proposed class."). Accordingly, plaintiffs have not satisfied the requirements of Rules 23(a)(2) and 23(a)(3).

Plaintiffs attempt to slice off particular questions, such as whether Sears acted as an ERISA fiduciary,[5] whether it failed to train its employees properly,[6] and whether it knowingly ignored confusion on the part of its employees,[7] arguing that these micro-issues are independently amenable for class treatment. This argument is unavailing. *See Matter of Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1302 (7th Cir.) (holding that when dissecting a case into separate issues for resolution, "the district judge must carve at the joint."), *cert. denied,* 516 U.S. 867, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995). Not only do individual questions exist as to reliance and damages, variations which are not neces-

---

4. Although *Frahm* denied class certification based on Rule 23(b)(3) and not Rule 23(a)(2), it cited *Sprague* favorably and stated that class treatment of the fiduciary duty claim was inappropriate because "different benefits advisers said or wrote different things to different agents." *Frahm,* 137 F.3d at 957.

5. Sears may have acted as an ERISA fiduciary with respect to some communications and not with respect to others (*see Plumb v. Fluid Pump Service, Inc.,* 124 F.3d 849, 854 (7th Cir.1997)), so, unless there is a class of retirees who received the same set of documents, the question whether Sears was a fiduciary is not one that can be evaluated on a class-wide basis.

6. Even if we assume that Sears' training was deficient, this failing would only come into play

if a retiree received misleading information from an improperly trained official, an issue that would necessarily turn on the evaluation of oral statements and therefore be inappropriate for class treatment.

7. Plaintiffs raised this argument in their prior motion for class certification when they attempted to distinguish *Frahm* by arguing that Sears "knowingly permit[ted] its staff to give misleading advice." We held that plaintiffs' argument "would, presumably, permit reliance on oral representations" and thus it was "of no help to plaintiffs on the class issue—it proliferates the sources of information." *In re Sears,* 1999 WL 35312, at *2.

sarily incompatible with class adjudication, they also remain on the basic question of liability. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137–38 (3d Cir.2000) (holding that certification of particular issues under Rule 23(c)(4)(A) was inappropriate where "the issue of liability itself requires an individualized inquiry...."). Liability depends on whether a retiree received a materially misleading set of communications from Sears. And that fundamental question varies across the class. As we suggested in our prior order on this subject, plaintiffs may be able to overcome this deficiency by showing that a particular group of retirees received a uniform set of communications. But they have not done so.[8] Therefore, as before, their motion for class certification is doomed on commonality and typicality grounds. Having rejected the motion under Rule 23(a), we need not reach plaintiffs' arguments regarding Rule 23(b).[9]

Plaintiffs spend a considerable amount of space in their briefs discussing the ERISA litigation brought against Unisys Corporation in the Third Circuit. *See In re Unisys Corp. Retiree Medical Benefit ERISA Litigation,* 57 F.3d 1255 (3d Cir.), *cert. denied,* 517 U.S. 1103, 116 S.Ct. 1316 (1996). They ask us to certify a class action against Sears patterned on *Unisys* and its progeny. Although *Unisys* was discussed in plaintiffs' prior motion for class certification, the arguments they raise in their present motion deserve a few comments. In the *Unisys* litigation, the district court permitted retirees to pursue their breach of fiduciary duty claim on a class-wide basis. The court recognized that some retirees had received specific communications from company officials, but found that any variations across the class could be handled

through subclasses and individual hearings. *In re Unisys,* 1994 WL 284079, at *27 (E.D.Pa. June 23, 1994). Without specifically ruling on the class certification issue, the Third Circuit affirmed the viability of the breach of fiduciary duty cause of action and thereby implicitly accepted the district court's decision to handle that claim as a class action. *In re Unisys,* 57 F.3d at 1261 n. 8. On remand, the district court held that three elements of the breach of fiduciary duty claim had been established on a class-wide basis and ordered additional discovery and hearings to resolve the remaining two issues (reliance by and resulting harm to retirees). *In re Unisys,* 957 F.Supp. 628, 645–46 (E.D.Pa.1997). In a handful of subsequent cases the Eastern District of Pennsylvania similarly has authorized class adjudication of an ERISA breach of fiduciary duty claim. *See In re Ikon Office Solutions,* 191 F.R.D. 457 (E.D.Pa.2000); *Feret v. Corestates Financial Corp.,* 1998 WL 512933 (E.D.Pa. Aug. 18, 1998); *Bunnion v. Consolidated Rail Corp.,* 1998 WL 372644 (E.D.Pa. May 14, 1998). Plaintiffs urge us to adopt the *Unisys* model, arguing that we should, in stage 1, certify a class action with respect to the two common documents they identify and then, in stage 2, take into account the various other communications received by retirees (presumably by conducting individual hearings).

We decline to employ plaintiffs' suggested approach. If we sat within the boundaries of the Third Circuit we might well proceed down the course taken by the courts in that jurisdiction. But we reside within the bailiwick of the Seventh Circuit, which has interpreted this issue in a markedly different manner than have the Third Circuit and

---

**8.** Our prior order allowed for the possibility that "identifiable groups [of retirees may] emerge" if we are presented with evidence that there exist cohorts of "persons who were furnished a finite package of materials to encourage their early retirement." *In re Sears,* 1999 WL 35312, at *2. Plaintiffs have not presented such evidence in their present motion. They continue to propose a class that received a variety of different communications, only stressing that each putative class member received two common documents. As before, we allow for the possibility that such evidence (and therefore a certifiable class) may emerge.

**9.** Plaintiffs claim to be seeking class certification under Rule 23(b)(1) and/or (b)(2) but not, as before, under Rule 23(b)(3). We note, however, that plaintiffs also relied on Rule 23(b)(2) in their prior motion for class certification and that we rejected that motion based, *inter alia,* on *Sprague* and *RCPA,* two cases in which the court refused to grant a class certification motion brought pursuant Rule 23(b)(2). *See Sprague,* 133 F.3d at 396–99; *RCPA,* 7 F.3d at 596–98.

Eastern District of Pennsylvania. Under *Frahm* and *RCPA,* class treatment of plaintiffs' estoppel and breach of fiduciary duty claims is inappropriate given the variety of different communications received by different retirees. *See Frahm,* 137 F.3d at 956–57; *RCPA,* 7 F.3d at 596–98; *see also Sprague,* 133 F.3d at 397–98. Moreover, the degree of variation in the communications at issue here would tempt us to shun the *Unisys* model even if it was favored in our circuit. In *Unisys,* as well as in *Feret* and *Bunnion,* the court emphasized that most of the allegedly misleading communications were issued on a company-wide basis. *See In re Unisys,* 57 F.3d at 1260, 1265–66; *Feret,* 1998 WL 512933, at \*2, 8; *Bunnion,* 1998 WL 372644, at \*6–7. In contrast, Sears' statements regarding retirement life insurance benefits were not as uniform. As we have seen, they differed from region to region, time to time, retirement seminar to retirement seminar, and individual inquiry to individual inquiry. For this additional reason the *Unisys* line of cases do not persuade us to break from the tradition of *Frahm, RCPA* and *Sprague.*

### CONCLUSION

For the reasons set forth above, plaintiffs' motion is denied.