Leonard **GESELL, Robert Wolfe, and Lathan Montgomery, for themselves and all others similarly situated, Plaintiffs,**

v.

**COMMONWEALTH EDISON CO., a corporation, and the Commonwealth Edison Service Annuity Committee, Defendants.**

No. 02–3071.

United States District Court, C.D. Illinois, Springfield Division.

Aug. 18, 2003.

**618**

John A. Baker, Law Offices of James P. Baker, Springfield, IL, for Plaintiff.

Scott E. Gross, Max Fischer, Jessica K. Benenson, Sidley, Austin, Brown & Wood, Chicago, IL, for Defendant.

### ORDER

SCOTT, District Judge.

This matter comes before the Court on Plaintiffs Leonard Gesell and Lathan Montgomery's Motion for Class Certification (d/e 24).[1] For the reasons stated below, Plaintiffs' Motion is DENIED.

Commonwealth Edison ("ComEd") is a large utility which provides electricity services to customers in northern Illinois. In the 1990s, ComEd had four large areas of business concentration: (1) customer service, (2) generation, (3) transmission, and (4) distribution. The generation section was divided into fossil fuel and nuclear generation sections. Plaintiffs Gesell and Montgomery were both employed in ComEd's fossil fuel division from 1981 through 1998. Both were employed at ComEd's Kincaid station ("Kincaid"), which was one of ComEd's ten fossil fuel generating stations.

In 1995, ComEd announced that it wished to sell its Kincaid and State Line fossil fuel stations. On April 17, 1996, ComEd announced that it had reached an agreement to sell both Kincaid and State Line. Kincaid was to be sold to Dominion Energy ("Dominion"), and State Line was to be sold to Southern Electric International. On February 28, 1998, the transfer of Kincaid to Dominion was completed.

Prior to the completion of the transfer of Kincaid to Dominion, the Kincaid bargaining unit employees were given three employment options. First, they could remain employed with ComEd and accept employment at a different ComEd facility. All Kincaid bargaining unit employees wishing to remain with ComEd were guaranteed positions at another ComEd fossil fuel station at the same rate of pay and benefits. Second, the employees could sever their employment with ComEd and seek a position with Dominion, the new owner of the Kincaid facility. Employment with Dominion was not guaranteed, but ComEd has presented evidence that most bargaining unit employees who sought employment with Dominion were hired. *See Manning Dep.*, p 57. The third option available to bargaining unit employees was that they could sever employment with ComEd and choose not to seek employment with Dominion, i.e. retire. *See Plaintiffs' Memorandum of Law in Support of Motion for Class Certification*, (d/e 25) ("Plaintiff's Memo") p. 4; and *Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification*, (d/e 31) ("ComEd Memo") p. 4.

Bargaining unit employees who chose to sever employment with ComEd under the second or third options could elect early retirement under the ComEd Service Annuity System ("CSAS"), if they were eligible. The CSAS allowed early retirement once an employee was 50 years old and had at least 10 years of service with ComEd. *CSAS*, § 5.3. Under the terms of the CSAS, any eligible employee electing early retirement would be entitled to receive an Early Retirement Service Annuity. The Voluntary Separation Plan ("VSP") for bargaining unit employees included an "extended" early retirement option. That extended option allowed any bargaining unit employee who was not eligible for early retirement under the CSAS as of

---

1. Plaintiffs' Motion states that on September 11, 2002, Plaintiff Robert Wolfe died of natural causes, and therefore is not seeking class certification.

February 23, 1998, but who would become eligible on or before December 18, 1998, to "extend" employment through December 18, 1998 (or through the date that the employee became eligible for early retirement) and then participate in the VSP. *See ComEd Memo*, pp. 4–5.

Management employees had their own VSP. They were given the option of: (1) seeking other employment at ComEd within a specified period of time, although employment was not guaranteed; (2) severing employment with ComEd and seek employment with Dominion, even though employment was less certain for management employees than for bargaining unit employees; or (3) severing employment with ComEd and not seeking employment with Dominion. *See Id.*, p. 5; *Plaintiffs' Memo*, p. 4, n. 3.

ComEd officials went to Kincaid several times to meet with the employees and discuss these options. Robert Manning, head of ComEd's fossil fuel division, said he had more than three meetings with ComEd employees. *Manning Dep.*, (Pl.Ex.1) p. 53. Stewart Kerr from the fossil fuel division's human resources department testified that there were approximately four different groups of meetings for bargaining unit employees and a similar number for management employees. *Kerr Dep.*, (Pl.Ex.2) pp. 28–29. The ComEd officials would meet with different groups of people, depending on their shifts and whether they were management or bargaining unit employees. *Manning Dep.*, p. 50. Not all the meetings were divided between bargaining unit and management, but there were some meetings designated for each group. *Id.* p. 51. Other ComEd officials also attended these meetings. *Kerr Dep.*, p. 30–31. There was no prepared speech for these meetings, and each meeting took different "twists and turns" depending on who attended the meeting. *Id.* pp. 28–29; *Manning Dep.*, pp. 73–74. Sometimes after the meetings, smaller groups would come up to ask questions to the union leadership or to Manning. *Manning Dep.*, p. 53.

Plaintiff Leonard Gesell testified that he recalled only two meetings attended by ComEd corporate officials. *Gesell Dep.*, (Pl. Ex.4) p. 75. Manning attended one, Kerr attended two, and Diane Bagoine, a ComEd pension representative, attended one meeting.[2] *Id.* pp. 75–76. Both management and bargaining unit employees could attend the meeting with Manning and Kerr.[3] *Id.* p. 80. Manning told the group that the package that was being offered was the best offer on the table, and there would be no better offer. *Id.* pp. 95–96. Manning implied that the other ComEd facilities might be sold later, but that the "first one out of the box," would get the best severance package. *Id.* pp. 97–98. To the best of his knowledge, Gesell attended all scheduled meetings with ComEd corporate officials. *Id.* p. 80. Ron Tanton, the head of the Kincaid facility, would frequently say at subsequent plant personnel meetings that the first one out of the box would get the best deal. *Id.* p. 102–03. The employees present at the personnel meetings when Tanton made these statements varied. *Id.* p. 104. It was after the meeting with Manning and Kerr that Gesell made his decision to sever employment with ComEd. *Id.* p. 86. Gesell's claims are based solely on things that certain people said, and not on any misleading written communication from ComEd. *Id.* p. 60.

Plaintiff Lathan Montgomery only heard Manning speak on one occasion. *Montgomery Dep.*, p. 46. The fact that Montgomery worked a swing shift or was not working that day prevented him from attending the other meetings that Manning held. *Id.* Manning said that the option presented to them was the best one they would get, but Montgomery does not recall the exact words Manning used. *Id.* pp. 47, 55. He does not remember the names of any other ComEd officials that spoke at that meeting. *Id.* p. 47. Montgomery's complaint against ComEd is not based on any written document, but is based solely

---

2. In Gesell's deposition transcript, the pension representative's name is spelled "Begoin" and in Plaintiffs' Memorandum in Support of Class Certification, her name is spelled "Bagoine."

3. It is unclear from Gesell's testimony if management employees also attended the meeting with Bagoine.

on what people told him "verbally." *Id.* p. 24.

Greg Moore, a former ComEd management employee who claims he was deceived into severing his employment, testified that there were numerous meetings with ComEd officials to discuss the VSP for management employees. *Moore Dep.,* p. 50. A these meetings, Manning frequently said that "the first one out of the box" is the best one. *Id.* p. 55. Normally at these meetings there would be a question and answer session to discuss the severance options. *Id.* p. 54. There were also plant level meetings for management employees, and bargaining unit employees might also have attended some of these meetings. *Id.* p. 62–64. Some employees did not attend because of their shift assignment. *Id.* p. 62. After the daily meeting of management people, there were "breakout groups" where people had the opportunity to speak with Tanton one-on-one regarding their options. *Id.* p. 67. In his affidavit, Moore states that in determining which option to choose, he relied heavily on the representations made by Manning, Tanton and other high ranking officials. *Moore Aff.,* (Pl.Ex.35), ¶¶ 15, 19.

Plaintiffs have submitted affidavits of twenty-nine former ComEd employees who also severed employment with ComEd. The affidavit of each employee states he was repeatedly told by ComEd officials that employees were getting the best offer available. Each employee states that at a meeting held on December 1, 1997, that was open to all Kincaid employees, Manning stated that the package being offered to Kincaid employees was better than any package that would be offered to employees at other ComEd stations that might be sold in the future. *See e.g., Affidavit of John W. Briggs,* (Pl.Ex.16) ¶ 13(a). Each employee states that Ron Tanton frequently said that "the first one out of the box will be the best and that the employees of other fossil stations would not receive as good of an offer. . . ." *Id.* ¶ 13(b). Tanton made this statement only a couple of days prior to the February 28, 1998, transfer date. *Id.* Each employee relied heavily on the statements made by Manning, Tanton, and other ComEd officials, and ultimately elected

to sever employment with ComEd, based in large part on these statement. *Id.* ¶¶ 15, 16.

Following the transfer of Kincaid to Dominion, ComEd sold its remaining fossil fuel stations to a subsidiary of Southern California Edison. As part of the severance package for the remaining ComEd employees, ComEd instituted a "Rule of 60" as an amendment to the CSAS. Under the Rule of 60, any employee covered by the CSAS would be entitled to receive an early retirement package that included a Social Security Supplement and deferred pension benefit as long as his age plus years of service totaled sixty, regardless of whether the employee was 50 years old with 10 years of service, as was previously required under the CSAS. *See ComEd Memo,* p. 9; *Plaintiffs' Memo,* pp. 7–8; *Plaintiffs' Exhibit 11.*

Plaintiffs' First Amended Class Action Complaint ("Complaint") (d/e 14) alleges that the Kincaid employees were repeatedly informed by ComEd officials that the severance incentive they were being offered was far greater than any benefits that would be offered to those employed at the other ComEd fossil fuel stations. *Compl.* ¶ 14. Plaintiffs severed employment with ComEd and accepted employment with Dominion, relying upon the assertions made by ComEd officials. Plaintiffs claim that had the ComEd officials not made the statements about the benefits of the severance package, they would not have severed employment with ComEd. Rather, Plaintiffs would have remained with ComEd and sought employment with another ComEd facility. *Id.* ¶ 34. Plaintiffs contend that the assertions made by the ComEd officials were a breach of the fiduciary duty ComEd. and the ComEd Service Annuity Committee owed to Plaintiffs. *Id.* ¶ 36. Plaintiffs seek the following relief: (1) a declaratory judgment stating that Defendants violated fiduciary duties they owe to Plaintiffs, by virtue of Plaintiffs' status as participants in the CSAS; (2) a mandatory injunction directing that Defendants pay to Plaintiffs those enhanced retirement benefits which they would have received had they not relied to their detriment upon those statements made by ComEd officials; (3) damages equivalent to all enhanced retirement

benefit payments lost by Plaintiffs following their retirement from ComEd; and (4) costs incurred for bringing this action.

Plaintiffs seek to certify a class consisting of the following members:

Those former employees of the Commonwealth Edison Company who:

(1) elected to sever their relationship with Commonwealth Edison in reliance on statements made by Company officials which led them to believe that the incentives which they would receive by doing so were greater than any incentives that would be available to them if they remained with Commonwealth Edison and severed their employment in the future; and

(2) who were determined not to be eligible for the benefits of the March 8, 1999 Amendment to the Commonwealth Edison Company Service Annuity System by Commonwealth Edison; and

(3) who would have qualified under the "Rule of 60" for enhanced pension benefits had they remained employed with Commonwealth Edison up and until December 12, 1999.

*Motion for Class Certification,* (d/e 24).

### ANALYSIS

This Court may certify a class only if all of the following requirements are met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the proposed class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Fed.R.Civ.P.* 23(a). If the requirements of Rule 23(a) are met, a class action may only be maintained if one of the following three factors are met: (1) separate actions would create a risk of (a) inconsistent or varying adjudications as to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class, or (b) adjudications with respect to individual class members which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or (2) the party opposed to the class has acted or refused to act on grounds generally applicable to the class so that final injunctive or declaratory relief in favor of the class as a whole is appropriate; or (3) the Court finds that questions of law or fact that are common to class members predominate over any questions affecting only individual members, and that a class action is superior to other means of adjudicating the matter. *Fed. R.Civ.P.* 23(b).

The fiduciary of a pension plan covered by ERISA "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries...." 29 U.S.C. § 1104(a)(1). A fiduciary breaches this duty if it "mislead[s] plan participants or misrepresent[s] the terms or administration of a plan." *Bowerman v. Wal–Mart Stores, Inc.,* 226 F.3d 574, 590 (7th Cir.2000) (citations omitted). Not every error in communicating information regarding a plan will be a breach of fiduciary duty. *Id.* To determine if a fiduciary breached its duty, this Court must examine " 'all alleged statements within the total mix of information available' to plaintiffs." *In re Sears Retiree Group Life Ins. Litig.,* 198 F.R.D. 487, 490 (N.D.Ill.2000) (*quoting Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 126 (2d Cir.1997)).

A misrepresentation constitutes an actionable breach if it is material. *Adamczyk v. Lever Bros. Co.,* 33 F.Supp.2d 679, 688 (N.D.Ill.1998). *Adamczyk* held that a misrepresentation regarding subsequent incentives are not material until such incentives are under serious consideration by the company. *Id.* If such incentives are not under serious consideration, then there would not be a misrepresentation as to a material fact because a prudent person could not base his decision on possible benefits that had not reached a level of serious consideration. *Id.* In another case within the Northern District of Illinois, the court did not apply the serious consideration test; it rather applied the test that "misrepresentations are material if they would induce a reasonable person to rely

upon them." *Beach v. Commonwealth Edison Co.,* 2002 WL 1827627 (August 8, 2002 N.D.Ill.). Regardless of the standard applied, the Court finds that as an element of their claim for breach of fiduciary duty, Plaintiffs must show that they relied on ComEd's statements and their reliance caused them injury.

■ An individual employee may bring a civil action to enjoin any practice which violates any provision of ERISA, including a breach of fiduciary duty. 29 U.S.C. § 1132(a)(3); *Varity v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Bowerman,* 226 F.3d at 591–92. Plaintiffs bringing suit under § 1132(a)(3) are not entitled to money damages; however, restitution, "when sought as a remedy for breach of fiduciary duty … is properly regarded as an equitable remedy because the fiduciary concept is equitable." *Bowerman,* 226 F.3d at 592.

## A. *RULE 23(a) REQUIREMENTS*

The Court finds that Plaintiffs have not satisfied the prerequisites of commonality or typicality. Given that Plaintiffs must meet all four of the Rule 23(a) prerequisites, the Court will not address the numerosity or adequacy requirements.

### 1. *Commonality*

■ Commonality requires the presence of questions of law or fact common to the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). The Court finds that Plaintiffs have not met the commonality requirement. Plaintiffs do not claim that they relied on any written statements from ComEd. They base their claims only on oral statements. However, there were different meetings held by ComEd officials, and the attendance at these meetings varied. Slight variations in the statements made by ComEd officials at the various meetings could well have conveyed different impressions to the listeners. The degree to which an employee relied on these statements, as opposed to other factors personal to him, in making his decision would vary significantly from person to person. Thus, this Court finds Plaintiffs have not satisfied the commonality requirement for class certification. This finding is supported by authority within this and other circuits.

In *Hudson v. Delta Air Lines, Inc.,* the plaintiffs alleged that Delta assured employees that those who retired after January 1, 1993, would receive fewer benefits than those who retired before that date. 90 F.3d 451, 453 (11th Cir.1996). The plaintiffs alleged that Delta, in oral conversations with potential retirees, assured those employees that it did not intend to offer enhanced retirement incentives in the future. *Id.* The plaintiffs alleged that they chose to retire before January 1, 1993, in reliance on Delta's promises that medical insurance premiums would remain constant throughout their retirement and that no improved retirement package was in the planning stage. *Id.* After they retired, Delta reduced the plaintiffs' medical benefits and also established a more favorable "Special Retirement Plan," offered to certain eligible employees. *Id.* The Eleventh Circuit affirmed the district court's denial of class certification on all the claims which related to the Special Retirement Plan (including the breach of fiduciary duty claim), on the grounds that plaintiffs did not show commonality. The appeals court held that:

> [e]ven if the plaintiffs are able to prove that Delta disseminated a false and uniform message to all potential retirees that no such plan was in the works at the time they made their decision to retire, they would also have to show that all members of the class would have deferred their retirement in the hope that they would be eligible for the Special Retirement Plan to be offered in the future. This sort of decision would necessarily have been highly individualized for each potential retiree.

*Id.* at 457.

In the case at bar, all the proposed class members would have been eligible for the Rule of 60 retirement plan. There were no restrictions, unlike the Special Benefits Plan in *Hudson. Id.* at 457 n. 10 (noting that "[t]here was no guarantee that persons eligible for the program would be allowed to enroll." *Id.*) However, as in *Hudson,* Plaintiffs in this case would need to prove that all members of the class would have deferred

retirement in the hope that they would have received more generous benefits later. As in *Hudson,* that decision would have been highly individualized for each class member.

In *In re Sears Retiree Group Life Ins. Litigation,* the plaintiffs' claim centered around the fact that their life insurance benefits were reduced after they retired. 198 F.R.D. at 487. One of the counts alleged that Sears breached its fiduciary duty under ERISA. *Id.* at 488. The district court noted that the breach of fiduciary duty claim depended on a variety of written and oral communications made to employees, and those communications differed across the class. *Id.* at 490. These communications included booklets distributed at various retirement seminars held across the country, personnel manuals from the 1980s and 1990s, a newsletter regarding retirement benefits, materials distributed to individuals who elected early retirement in 1993, and oral and written statements made by company officials in response to specific, individual questions from retirees. *Id.* at 490–91. The district court noted that different retirees received a different mix of these communications, and "the total mix of communications varied by retiree." *Id.* at 491. The district court found that given the "myriad variations" of communications made to the retirees, there was no commonality in the plaintiffs' claim. *Id.* (*citing Frahm v. Equitable Life Assurance Society,* 137 F.3d 955 (7th Cir.1998) and *Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir.1998) (en banc)).

The proposed class of Plaintiffs is not as large as the ones in *Sears* or *Hudson.* Further, the proposed class in the case at bar consists of employees at only one facility. However, for the same reasons set forth in *Hudson* and *Sears,* the Plaintiffs have not satisfied the prerequisite of commonality which would allow certification. Both Gesell and Montgomery state that the misleading statements made by ComEd officials were all oral, and none were written. They contend that Manning and Tanton made misleading statements that the severance package was the best offer available and that the "first one out of the box" would get the best deal. The twenty–nine affiants all swear that Man-

ning frequently made such statements, and specifically did so at a meeting open to all ComEd employees held December 1, 1997. They also swear that Tanton frequently made statements about the "first one out of the box," and did so several days prior to the transfer date of February 28, 1998.

However, not all the employees attended all the meetings that were conducted by ComEd officials. For example, Montgomery testified that he only attended one meeting, and all the rest either were held when he was working on a different shift, or had a day off. Gesell testified that he attended two meetings. He testified that he attended all the meetings held by ComEd officials, even though there is evidence that more than two meetings were held. *See Gesell Dep.,* p. 80; *Manning Dep.,* p. 51. Moore testified that there were meetings just for management employees, but bargaining unit employees might have attended some of the meetings as well. *Moore Dep.,* pp. 62–64. Moore also testified that there were daily meetings of management employees, and after these meetings there were "breakout groups" that spoke with Tanton regarding the severance options. *Id.* p. 67. Both Gesell and Montgomery testified that there were many rumors and individual discussions at ComEd regarding the severance options. *Gesell Dep.,* p. 86; *Montgomery Dep.,* pp. 60–61.

While some meetings might have been attended by almost all the employees, there were also instances of one-on-one conversations with ComEd officials. Further, there were some meetings that were held primarily for management employees and others held for bargaining unit employees. In light of the fact that the various meetings that ComEd officials held, both with corporate officials such as Manning and Kerr, and with senior plant level officials such as Tanton, were attended by different people, it is likely that the employees learned different pieces of information that might have affected their decision whether or not to sever employment with ComEd. Therefore, Plaintiffs have not satisfied the commonality prerequisite for class certification. *See Sears,* 198 F.R.D. at 491.

## 2. *Typicality*

■ Plaintiffs have satisfied the typicality requirement if the named plaintiff who proves his own claim would also prove the claim of the entire class. *Sprague*, 133 F.3d at 399 (noting the premise of the typicality requirement is stated as, "as goes the claim of the named plaintiff, so go the claims of the class." *Id.*) While the typicality and commonality standards are similar, satisfying the commonality requirement does not guarantee that a party has satisfied the typicality requirement. *Jackson v. Shettle*, No. S88–478, S88–422, 1990 WL 610872, at *1, *2, *3 (N.D.Ind., May 1, 1990).

■ In *Retired Chicago Police Ass'n. v. City of Chicago*, the plaintiffs ("*RCPA*") sued the city under breach of contract and estoppel theories when the city broke its promise to employees that annuitants would receive lifetime health coverage at unchanged rates. 7 F.3d 584, 590 (7th Cir.1993). RCPA sought to certify a class consisting of annuitants not only of the City's police fund, but also the fire, municipal and labor funds. *Id.* The Seventh Circuit found that the proposed class did not satisfy the typicality requirement because there were different communications made to various groups of city employees. *Id.* at 597.

The Seventh Circuit noted that there was nothing showing that the communications made to the police were the same that were made to the fire, laborer, or municipal annuitants. The appeals court also noted that the statements made only to police varied, because

> the record indicates that some annuitants heard these communications at retirement seminars, some read a booklet, some heard through word of mouth, and many simply had a general impression of the benefits to which they were allegedly entitled. Some were ignorant of any alleged promises.

*Id.* The Seventh Circuit concluded because the RCPA did not include members of the other fund groups, it cannot be assumed that the police officers' claims "have the same essential characteristics as the claims of the class at large." *Id.* (citation omitted). The Court also noted that there is authority, mainly in fraud and securities cases, that claims based on substantially oral rather than written communications are not proper for class certification "unless the communications are shown to be standardized." *Id.* at 597, n. 17.

In *Sears*, the district court found that because of the varying communications each retiree received, the typicality requirement was not met for plaintiffs' estoppel or breach of fiduciary duty claims. *In re Sears Retiree Group Life Ins. Litig.*, 198 F.R.D. at 491. The district court cited to the *Sprague* holding that "[e]ach claim ... depended on each individual's particular interactions with [the employer]-and these, as we have said, varied from person to person. A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Id.* (quoting *Sprague*, 133 F.3d at 399).

Similarly in the case at bar, there were different meetings that different employees attended. Given that different employees likely based their decisions on different statements or other reasons, the fact that one Plaintiff can prove his claim that he severed employment from ComEd in reliance on the alleged misrepresentations, does not mean that every proposed class member will be able to prove a claim against ComEd. While ComEd officials might have made similar statements, there is no evidence that there was a "standardized" oral misrepresentation made by ComEd officials. Therefore, Plaintiffs have not satisfied the typicality prerequisite for class certification.

Plaintiffs have cited to authority in which the court held that the fact that each plaintiff needed to prove reliance was insufficient to preclude class certification. *In re Prudential Ins. Co. of America*, 962 F.Supp. 450, 516 (D.N.J.1997) *aff'd* 148 F.3d 283, 314 (3d Cir. 1998); *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131, 1147 (E.D.N.Y.1996); *Feret v. Corestates Financial Corp.*, 1998 WL 512933 (August 18, 1998 E.D.Pa.). Plaintiffs also cite to *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) for the proposition that class certification should not be denied merely because of factual differences between plaintiffs, and *Chandler v.*

*Southwest Jeep–Eagle,* 162 F.R.D. 302 (N.D.Ill.1995) for the proposition that individualized statements of reliance, causation, and damages do not render the case unsuitable for class certification. However, only *Feret* and *Medicare Beneficiaries' Defense Fund* dealt with ERISA breach of fiduciary duty claims. *Feret* is the only case that involved a breach of fiduciary duty claim against the employer and employer sponsored benefit plan.

This Court notes that in *Sears,* the plaintiffs cited to authority from within the Third Circuit, including *In re Unisys,* from the Eastern District of Pennsylvania, to support their argument that varying communications received by proposed class members did not bar certification, because any variations across the class could be handed through subclasses and individual hearings. *See In re Sears Retiree Group Life Ins. Litig.,* 198 F.R.D. at 492 (citing *In re Unisys,* 1994 WL 284079, *27, (E.D.Pa. June 23, 1994)). However, the Northern District of Illinois declined to take the approach of the courts within the Third Circuit. *Id.* The district court noted that:

> we reside within the bailiwick of the Seventh Circuit, which has interpreted this issue in a markedly different manner than have the Third Circuit and Eastern District of Pennsylvania. Under *Frahm* and *RCPA,* class treatment of plaintiffs' estoppel and breach of fiduciary duty claims is inappropriate given the variety of different communications received by different retirees.

*Id.* (citing *Frahm,* 137 F.3d at 956–57; *Retired Chicago Police Ass'n.,* 7 F.3d at 596–98; *Sprague,* 133 F.3d at 397–398).[4] This Court agrees with the Northern District's decision in *Sears.* Plaintiffs' breach of fiduciary duty claims lack commonality and typicality because of the variety of statements that the members of the purported class received. In summary, since Plaintiffs have failed to satisfy the commonality and typicality prerequisites of Rule 23(a), class certification is not appropriate.

**B.  RULE 23(b) REQUIREMENTS**

■ If Plaintiffs satisfy all four of the prerequisites set forth in Rule 23(a), they must then meet one of the three requirements of Rule 23(b). The first requirement of Rule 23(b) is that the prosecution of separate actions would carry the risk of inconsistent or varying adjudications, or the adjudications with respect to individual members of the class would be dispositive of the interest of other members of the proposed class that are not parties. *Fed.R.Civ.P.* 23(b)(1). The second requirement is that the party opposing the class has acted or refused to act on grounds generally applicable to the class, making final injunctive or declaratory relief appropriate. *Fed.R.Civ.P.* 23(b)(2). The final option for Rule 23(b) is that the Court must find that questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to all available methods of adjudicating the controversy. *Fed.R.Civ.P.* 23(b)(3). Plaintiffs contend that they have satisfied all three requirements, but only argue as to how they have satisfied Rule 23(b)(2) and Rule 23(b)(3). Therefore, the Court will only address the requirements of Rule 23(b)(2) and 23(b)(3). Because Plaintiffs claim that certification under Rule 23(b)(3) would be the most appropriate, the Court will address that aspect first.

**1.  Rule 23(b)(3) Predominance and Superiority Requirement**

The Court finds that common questions do not predominate over individual issues, and therefore, class certification is not appropriate under Rule 23(b)(3). As stated above, not all of the members of the putative class attended the same meetings, or heard the same presentations. While the affiants all testify to statements that Manning and Tanton made, these statements alone are insufficient to satisfy the predominance requirement because there were other sources of information at ComEd, including one on one conversations, meetings of only management or bargaining unit employees, and question

---

4. In *Frahm,* the Court denied class certification on plaintiff's breach of fiduciary duty and estoppel claims on the grounds that under Rule 23(b)(3), common questions of law or fact did not predominate because of the variety of communications the employees received.

and answer sessions that were not attended by all the members of the proposed class.

In one case which included an ERISA breach of fiduciary duty claim, the Seventh Circuit has refused to allow certification under Rule 23(b)(3) because "everything depends on what was said or sent to each agent [employee] personally, and different benefits advisers said or wrote different things to different agents. Individual rather than class litigation is the best way to resolve person-specific contentions when the stakes are large enough to justify individual suits." *Frahm*, 137 F.3d at 957 (*citing Sprague*, 133 F.3d at 397–99, and *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir.1995)). Similarly in this case, each claim would depend on what each Kincaid employee heard, and given that the employees each had varying sources of information as evidenced by the changing attendance at meetings, common claims do not predominate. Further, each claim would depend on other decision-making factors unique to each employee.

### 2. *Rule 23(b)(2) Equitable Relief*

█ If a class is certified under Rule 23(b)(2), there is no option for class members to opt out of the class, on the presumption that because the plaintiffs seek class-wide injunctive relief, the interests of class members are "cohesive and homogeneous." *Lemon v. International Union Operating Eng'rs Local 139*, 216 F.3d 577, 580 (7th Cir.2000). Such an opt out option exists for a class certified under Rule 23(b)(3), in part because a suit for money damages, "jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim," even if the plaintiffs also seek class-wide injunctive relief. *Id.* The Seventh Circuit has vacated class certification under Rule 23(b)(2) when "the requested monetary damages are not incidental to the plaintiffs' requested equitable relief." *Id.* at 582.

As set forth in *Bowerman*, plaintiffs bringing suit under § 1132(a)(3) are not entitled to money damages; however, restitution, "when sought as a remedy for breach of fiduciary duty ... is properly regarded as an equitable remedy because the fiduciary concept is equitable." *Bowerman*, 226 F.3d at 592. Despite this classification of relief under ERISA as equitable, one court within this circuit had held that, "[r]egardless of whether the award of money damages under ERISA is considered equitable or legal, Rule 23(b)(2) does not extend to cases where the appropriate final relief is predominantly money damages." *Burke v. Local 710 Pension Fund*, No. 98 C 3723, 2000 WL 336518, *5 (N.D.Ill. March 28, 2000). However, another court within this circuit has allowed certification under Rule 23(b)(2) when the plaintiffs were entitled to the sum of money that was held by the employer's pension fund, since the type of restitution they sought was equitable restitution, which may be recovered under § 503 of ERISA. *Berger v. Nazametz*, No. 00–CV–0584–DRH, 2002 WL 1774744, *2 (S.D.Ill. July 22, 2002). While *Burke* and *Berger* both were ERISA cases, neither involved allegations of breach of fiduciary duty.

In the case at bar, the Court finds that the relief Plaintiffs seek is predominantly monetary. They seek an injunction directing that Defendants pay them the enhanced retirement benefits they would have received had they not relied to their detriment upon the statements of ComEd officials. While such a monetary award may be classified as equitable, determining the award of each individual class member would "require judicial inquiry into the particularized merits of each individual plaintiff's claim." *Lemon*, 216 F.3d at 580. When such an inquiry is necessary, certification under Rule 23(b)(2) is improper. *Id.* at 581–82.

### CONCLUSION

Plaintiffs have not shown that there are questions of law or fact common to the proposed class, or that the claims of the named Plaintiffs are typical of the claims of the entire class. Therefore, Plaintiffs have not satisfied all the prerequisites to a class action set forth in Rule 23(a). Even if they had satisfied these prerequisites, they have not satisfied any of the requirements set forth in Rule 23(b) which would allow a class action to go forward. THEREFORE, class certifica-

tion is not proper, and Plaintiff's Motion (d/e 24) is DENIED.

IT IS THEREFORE SO ORDERED.